ROBERT F. WINGATE, Administrator of the Estate of E. H. Ridgeway, deceased, Plaintiff in Error, *v.* ORVAL POOL, Defendant in Error.

### ERROR TO JEFFERSON.

An administrator, like a trustee, must account to the estate for any profits arising out of the use of its funds, and he should satisfy claims with the smallest amount of assets; as by the purchase of bank bills at a discount.   And his reasonable labor and expenses for that object, or interest upon the use of his own funds, should be allowed against the estate.

Any saving or accumulations by the administrator, in the management of the estate, become assets, and liable to distribution.

A party must present his claim and have it allowed in the probate court within two years, or he cannot become a distributee; nor can he recover from the estate, even out of newly discovered assets, unless his claim has been allowed by the probate court.

THE complainant below, filed his bill against E. H. Ridgeway, since deceased, substantially as follows:

That Robert Castles, with complainant as his security, executed to the Bank of Illinois, at Shawneetown, two notes, one dated July 3rd, 1841, payable seven months after date, for $770, the other dated August 4th, 1841, payable seven months after date, for $900; that Castles died intestate, about the 25th of September, 1846, leaving said notes unpaid, and his estate in an embarrassed and insolvent condition; that Walter B. Scates, by appointment of the probate court of Jefferson county, became administrator of his estate, and afterwards resigned, and on the 1st day of June, 1848, said Ridgeway, deceased, by appointment of said probate court, became administrator *de bonis non* of said estate; that Castles also, at the time of his death, owed said bank by note, due 31st of March, 1842, for $900, upon which said Ridgeway, with E. H. Gatewood, since deceased, were securities.

That said E. H. Gatewood was co-security with said complainant, upon said note dated August 4th, 1841, and one William Castles, since deceased, was his security on said note, dated July 3rd, 1841.

That said three notes, amounting in the aggregate, principal

and interest, to $3,827.20, were filed in said probate court, and allowed against said estate, upon which indebtedness Ridgeway was ordered to pay the following sums: August 26th, 1848, $613.35; March, 1850, $175.96; April, 1851, $389.82; total, $1,179.13.

That at the time said orders were made, the certificates of said bank could have been bought at twenty-five cents to the dollar, and such was their market value, and the greater part, if not the whole of said three notes, could have been paid off with the money so ordered to be paid; but that Ridgeway, unmindful of his duty, and intending to defraud the complainant, as the security of the said R. Castles, and render him liable to pay the notes on which he was security, purchased the certificates of said Bank, which cost, and were of the value of about fifty dollars, and paid therewith the said dividend of six hundred and thirteen dollars and thirty-five cents, and also the other dividends in like manner.

That the complainant was sued on the two notes, for which he was security, and compelled to pay $2,274.23, and thirty dollars cost.

That Ridgeway is accountable to complainant for a proportionate share of the sums of money so ordered to be paid on the said three notes, in proportion to the amount due upon each note at the time the orders were made, deducting the small payment made in bank certificates, at their real value. The bill prays that Ridgeway answer the same under oath, and for judgment for the amount which ought to have been paid over to the bank on the two notes upon which the complainant was security, deducting the value of the certificates paid by Ridgeway, and for interest, etc.

Ridgeway filed his answer under oath, February 28th, 1854, by which he admits the death of Castles, and that administration on his estate was had, as alleged, but that he had no knowledge of the complainant being security, as in his bill alleged, and calls for the proof.

That his intestate's estate was in an embarrassed condition, at the time of his death, and that unless he should be able to collect the debts due his estate, about which he was wholly unable to state, the estate would be insufficient to pay the debts proven and allowed against it, but the amount of the deficit he could not then ascertain, as the estate then remained in an uncertain and unsettled condition.

That E. H. Gatewood and William Castles died, and the said Gatewood insolvent, as alleged, but whether said William Castles' estate was insolvent he did not know, and called for proof.

That the notes in complainant's bill mentioned were filed, and

on the 23rd day of March, 1848, allowed against said R. Castles' estate ; that the amount of said notes when allowed were consolidated, and amounted in the aggregate, as near as he could ascertain, to the sum of $3,758.41, principal and interest, upon which sum, in striking dividends upon his intestate's estate, he was ordered by said probate court to pay as follows : August 28th, 1848, $612.35 ; April, 1850, $175.96 ; April, 1851, $389.82 ; total, $1,178.13.

That the said first and second dividends, amounting to the sum of $788.31, he paid with the scrip and paper of said bank, which he purchased in Cincinnati, Ohio, where he had gone for that purpose alone, from his residence in Jefferson county, Ill., at an expense of thirty dollars ; that he actually paid for the said paper and scrip, with which he paid off the said sum of $788.31, the sum of fifty cents to the dollar ; he also paid said dividend of $389.82, with the scrip and paper of said bank, for which he actually paid, in the city of St. Louis, the sum of sixty cents to the dollar.

That he acted as he did, not with the intent to defraud any one interested in said estate, but to make himself whole and secure as far as he could, for his intestate's estate was largely indebted to him, on account of large debts he had been compelled to pay as security for his intestate, amounting then to $646, a large amount of which debts were transferred to him since they were filed and allowed against his intestate's estate, and were subsisting claims in his favor, against the same.

That he knew nothing of the complainant being security as alleged, but called for proof.

That the estate of his intestate is still in an unsettled condition, and that he has been unable to make a final settlement of the same, there being a large amount of money due said estate, sufficient, or nearly so, to pay the debts allowed and proven against the same, but what amount he would be able to collect, he was unable to state.

That so far as he has been able to ascertain from the records in said estate, and from every other means in his power, the assets of the same unappropriated, are as follows : Cash on hand, $154 ; debts due the estate, $2,000.

That he paid off the dividend so struck in favor of the bank, fully in accordance with the orders of said probate court, and denies that he acted fraudulently, or attempted to defraud the complainant in the management of said estate.

That the complainant has not filed or had allowed against his said intestate's estate, any claim or demand whatever, and has no subsisting claim against his intestate's estate.

At the October term, 1857, of the court below, the death of

Ridgeway was suggested, and leave granted to make R. F. Wingate, his administrator, a party, who came into court, waived process, and entered his appearance in said cause, and said cause being finally submitted to the court, at the May term of said Circuit Court, it was decreed that the complainant recover of the defendant, as administrator of E. H. Ridgeway, deceased, the sum of $415, together with the cost of suit, to be paid out of the estate of said Ridgeway, to be administered in due course of administration.

R. F. WINGATE, *pro se.*

R. S. NELSON, for Defendant in Error.

WALKER, J. It is a familiar rule, that profits arising from the use of a trust fund, or in the discharge of claims against a trust fund, by the trustee, inure to the benefit of the *cestui que trust.* The plaintiff in error, as administrator, occupied the relation of trustee to the estate, its creditors, and distributees. As such, it was his duty to act for the best interest of the fund in his hands, and to discharge the claim of the bank with the smallest amount that was necessary. As the claim could be paid with bank paper, which was at a discount, it was his duty to avail himself of that advantage, by the use of the funds of the estate. And he had the right to charge for all necessary and reasonable outlays and expenditures in procuring such funds. If he, in doing so, used his own means, they should be allowed him, in his account against the estate, with interest. And he had the right to be allowed for necessary traveling expenses, and for his time in procuring such funds. And all the remaining profits on such a purchase become in his hands general assets, to meet debts against the estate, and for distribution. He has no right to speculate upon or with the trust fund. He has no claim to such profits, and he cannot appropriate them to his individual use.

When such profits were made by the administrator, and became assets in his hands, they were liable to distribution, precisely as any other funds of the estate. They could only be appropriated to the payment of claims allowed against the estate, and in the order and in the mode prescribed by the statute; or if anything remained after paying the debts, be distributed in the same manner as if the surplus had been derived from any other source. When assets are thus acquired, they are not distinguishable from other general funds of the estate, and are subject to the same legal and equitable rules, in their appropriation.

The question is then presented, whether the defendant in

error has shown himself entitled, either in law or equity, to any portion of this fund. The bill fails to allege, and the proof to show, that he has ever presented his claim, and had it allowed against the estate. And it does appear that more than two years had expired since the grant of letters of administration, and before the exhibition of his bill. This being the case, his claim is barred, by the 115th section of the statute of wills, (Scates' Comp. 1206), from a *pro rata* participation with the other creditors in the general assets of the estate. To have entitled himself to that benefit, he should have filed, and had his claim allowed within the limited period. Nor can he have any benefit of subsequently discovered assets, after filing the inventory and sale bill, as his claim has never been exhibited and allowed. And even if this fund was of this latter character of assets, which does not appear from the evidence, defendant in error can have no claim to any portion of this fund. Equity follows the law, and when this claim became barred by the statute, a court of equity could not afford relief any more than could a court of law. The claim is as effectually barred in the one court as in the other. The defendant in error, having failed to show by the allegations in his bill, or by the proofs in the case, that he is entitled to any relief, the decree of the court below must be reversed, and the bill dismissed.

*Decree reversed.*