## JOHN B. COLTON, EXECUTOR,
### v.
## FIELD & LEITER ET AL.

*Administration—Final Account—Insolvent Estate—Release by Part of Creditors of Claims against Estate—Compensation of Executor—Rights of Remaining Creditors.*

1. The rule that a trustee can make no profit out of his office, applies to all who hold fiduciary relations, and includes executors and administrators.

2. Where the executor of an insolvent estate is released from the payment of further dividends by part of the creditors thereof, the remaining creditors are entitled to a *pro rata* distribution of any fund thereafter arising.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for appellants.

The rule inhibiting a trustee to purchase from or sell to himself as such, is for the protection of the *cestui que trust*

Colton v. Field & Leiter.

It concerns no one else.    The *cestui que trust,* being *sui juris* and otherwise competent to contract, may request such dealing, or upon notice and full knowledge either ratify and confirm or disaffirm it at his pleasure.    4th Kent (11th Ed.), Sec. 438, and note; Perry on Trusts (2d Ed.), Sec. 198; Thorp v. McCullum, 1 Gilm. 627; Follansbee v. Kilbreth, 17 Ill. 522.

The privilege is his alone, and for his sole benefit and advantage.    Under no circumstances can it inure to the advantage of another save by the will and wish of the *cestui que trust* affirmatively expressed.    Perry on Trusts (2d Ed.), Secs. 198, 428.

In the case at bar, the action of the executor was taken at the request of the great majority in number and amount of the creditors of an estate known to be insolvent, to the end that they might thereby realize something more than could be hoped for under statutory and usual management.    As the administration progressed they were fully advised as to what the executor was doing.    At its conclusion a full, accurate and detailed account of his methods, doings and the result was spread out before them for examination, criticism, approval or disapproval.    They heartily approved the result attained, emphasizing such approval by releasing the executor from further liability as to their respective claims allowed against the estate.    This they might lawfully do, since such interests were personal to them, each separate and distinct from every other. In, and to them, and to the dividends collectible thereon, no other creditor had any right, title or interest whatever.    As to them, each for himself might rightfully do what he would with his own.    So heartily content, so thoroughly satisfied were they with the outcome that they, of their own motion, under their hands and seals, stated such approval and satisfaction that the executor should retain the perquisites allowed him by the County Court and any incidental benefits, if any, derived from furnishing the goods which his statement of account showed he had furnished.

That this was their deliberate intent upon full knowledge of the facts is clearly evident.    But since a man may rightfully do what he will with his own their right so to do is clear.

There was nothing in the relation of trustee and *cestui que trust* to prevent their so expressing their approval of his conduct in the premises. Bispham's Equity (2d Ed.), Sec. 237, p. 398; Perry on Trusts (2d Ed.), Sec. 428, and note 1; Harwood v. Robinson, 14 Ill. App. 565.

Messrs. FREDERICK A. WILLOUGHBY and N. W. BLISS, for appellees.

Mr. Colton claims, in the language of the stipulation, that after paying appellees their *pro rata* share, he "is entitled to the balance of said amount as against the creditors who have filed said receipts, or against the estate." By the payment of this trifling amount, about $500, and retaining the balance, amounting to about $3,500, he expects to comply with the decision of the Appellate Court, that the executor could not be allowed to make a profit in his dealing as executor with himself as a private individual.

This money is part of the assets of the estate, and as such belongs to the creditors.

In 1878 certain creditors, by a receipt in full, discharged the executor from further liability on account of their claims against the estate.

The release or receipt of these creditors could not inure to the personal benefit of the executor, and as such it was a release to the estate.

This is evident from the very language of the receipt. They "release the said John B. Colton from further liability as such executor, on account of our respective claims against said estate."

No assignment of their claims or of the balance of such claims is here made directly or inferentially. Colton has made unusual exertions and incurred risk of extra trouble and personal loss by reason of the illegal proceedings, at their request, in administering the estate, and now they approve his course and release him as executor from further liability to them. This is no sale or assignment of their claims to Colton; it is *in totidem verbis* a release to the executor, that is, to the estate.

This amount of $3,879.34, which, under the decision of the Appellate Court, the executor must account for to the estate is, of course, assets of the estate, for the payment of the indebtedness of the estate. Upon it, as upon all other assets, the creditors have a claim for the satisfaction of the indebtedness of the estate to them. The receipt by a portion of these creditors does not put the executor in the position of a creditor *pro tanto* of the estate. Such was not the intention of the creditors, nor the legal effect of their receipt. They having receipted to the estate, and being still content with such action, the money in question must be applied to the payment of such claims as remain unsatisfied and undischarged, viz., the claims of appellees and the other creditors who have not receipted to the estate.

If, however, the creditors had intended and attempted to assign their claims to Colton, such assignment would not inure to his benefit, but to that of the estate.

"Nor, if an executor compound debts due from the testator, or buy them in for less than their amount, shall he be personally entitled to the benefit of the composition; but other creditors, or the legatees, or the party entitled to the surplus, shall have the advantage of it." Toller's Law of Executors (4th Am. Ed.), p. 481.

All savings and profits made by an executor out of the funds of the estate, or in the payment of claims at a discount, or in depreciated paper, belong to the estate, and become assets for the payment of debts and distribution. Wingate v. Pool, 25 Ill. 118.

In the above cited case the Supreme Court affirm the well known doctrine that all profits made by an administrator belong to the estate, and apply it to the case where an administrator paid off certain notes to a bank with paper of the same bank which he had bought on the market at a discount with his own funds, and compel him to account to the estate for such profit. He did not, indeed, claim to be the "equitable assignee" of these notes after he had taken them up, and insist that they should be kept on foot for his benefit, as does the executor in the case at bar, but such a claim, if made,

would not have been sustained by the court, for such administrator could not be allowed to indirectly make a profit out of the estate.

UPTON, J.   On the eleventh day of December, 1870, appellant filed in the County Court of Knox county his final report and account as executor of the estate of one E. F. Thomas, deceased, and asked of that court the allowance and approval thereof and that he be discharged as such executor.   To this application, appellees, who are creditors of the estate, objected, and filed in that court, severally, specific objections thereto, charging the executor with neglect and mismanagement in many particulars, to their injury.

A hearing was had on this application in the County Court and the objections were not sustained; the amount as filed was allowed and the executor was discharged, from which appellees appealed to the Circuit Court, wherein the order of the County Court was affirmed, and the case was then further appealed to this court, where a hearing was had at the June term. 1880, and the judgment of the Circuit Court was reversed and the cause remanded with directions, which will be found in Vol. 7, Appellate Court Reports, at page 379 thereof.

Upon this remand, the executor restated and refiled his final account in said County Court as follows:

"Statement of account under finding of court.

"*Charge.*

"To amount of reductions on bills furnished estate store by order court with all profit and discount off. Ex. A.............................$2,320.00

"To excess of Commissioner's Ex. B.............  147.06

                                                          $2,467.06

"To interest on above from Dec. 23, '76, to date, July 1, 1886................................$1,412.28

"Balance on hand..............................$3,879.34"

A hearing was had upon this report and amount as restated, and as to the distribution of the balance so reported in the

hands of the executor, the County Court made an order in substance as follows:

"This cause coming on to be heard, being remanded from Circuit Court for restatement of account, and for an order of distribution, the executor having filed his final report showing balance on hand of $3,879.34. * * * Ordered that the executor first pay Field, Leiter & Co. and H. W. King & Co., each the sum of $300 for their expenses in and about the resisting of the discharge herein, and that the balance be distributed *pro rata* among all creditors of said estate who have proved their claims against the estate in proper time."

From which order both appellant and appellees prayed an appeal to the Circuit Court of Knox county. The cause was heard in the Circuit Court and upon that hearing a receipt and release by a large number of the creditors of said estate to the appellant as executor was put in evidence, which in effect was as follows:

"In the matter of the estate of E. F. Thomas, deceased, late of Galesburg, Illinois.

"At the outset of the executorship of John B. Colton, executor of said estate, he was requested by E. S. Jaffray & Co., of New York, and other creditors of said estate, representing three-fourths in number and amount of the entire liabilities against said estate, to obtain from the County Court of Knox county, Illinois, an order permitting him to continue the business of said E. F. Thomas for such reasonable time as he deemed necessary for the advantageous sale of the stock of goods on hand belonging to said estate.

"Such order was made by said court, the necessary supplies were purchased by said Colton, executor, under said order, and the estate fully administered upon thereunder by him in accordance with the wish of said creditors, and the entire net proceeds of said estate distributed to the creditors, amounting to forty-six and five-eighths per cent. of their respective claims. And said executor having filed in said County Court his final account current accompanied with the proper vouchers, and the judge of said court having examined and approved of the same, he entered a final order declaring the estate in-

solvent, and discharging said executor from further liability thereunder. Now, in consideration thereof, and for other good and valuable considerations by us received through the unusual exertions used by the said Colton, executor, and personal risk, extra trouble and personal loss by reason of acting under and carrying out the order of said court in the interest of said estate, we do each and every of us respectively approve the course of said Colton as aforesaid in the management of the said estate and release the said John B. Colton from further liability as such executor, on account of our respective claims against said estate of E. F. Thomas, deceased. Witness our hands and seals set opposite our respective claims."

Which was signed, with seals attached, by some thirty in number of the creditors of the estate, and representing in the aggregate about $45,000 of claims.

It was stipulated in the court below that appellees were unpaid creditors of said estate; that the aggregate amount of their original claims was about $5,000, upon which had been paid, in due course of administration, about forty-six and five-eighths per cent., and for which unpaid balance no release or discharge had been given.

At this hearing the executor sought to obtain an order accepting and approving his account and report as restated, and his discharge as such executor, upon the payment to the appellees and other unreleased creditors (the appellees were the only creditors objecting to such distribution and discharge) of their *pro rata* share of this balance of $3,879.34, then remaining in the hands of the appellant as such executor.

The appellees contended that as all the other creditors of said estate, or substantially all, had released their claims to any further share therein, they were legally entitled to the entire fund so remaining in the hands of the executor in satisfaction of the full unpaid balance of their claims, as well as those of other than released creditors of the estate, if any, if sufficient for that purpose, and if not, to share *pro rata* with such other unreleased creditors.

That the release and discharge of the executor prevented all further claim to, or right of participation in the fund or bal-

Colton v. Field & Leiter.

ance found remaining in the hands of the appellant as execu-
tor, by the releasing creditors, but did not divert or charge it
as assets of the estate for distribution among the existing cred-
itors of the estate, nor transfer the same in whole or in part
to appellant in his own right.    The Circuit Court on hearing
entered the following order or decree in substance:

"And now this case coming on for hearing, and the court
having heard the evidence in the cause and the argument of
counsel for the respective parties hereto, and being fully
advised in the premises, doth order, adjudge and decree that
the fund or money heretofore accounted for by the executor
herein in his report or account current made by order of this
court to the County Court of this county, be paid to the
objectors, Field, Leiter & Co., Henry W. King & Co., and
all other creditors whose claims have been previously not
released or satisfied, in satisfaction of their claims against the
estate of E. F. Thomas, deceased, if the same shall be sufficient
to satisfy said claims, and if not sufficient, then the same shall
be applied *pro rata* on said claims.

"It is further ordered that the costs in this case, including
all costs that have been incurred in this, as well as in said County
Court, upon the application of said John B. Colton, executor
as aforesaid, shall be paid by the said John B. Colton, but not
out of funds belonging to the estate."

From which the executor appeals to this court and assigns
for error:

1st.    The entry of the decree of distribution.

2d.    In not limiting the amount of distribution to be paid
appellees and other unreleased creditors to the *pro rata* share
of each in the fund in the executor's hands, all claims allowed
against said estate being considered.

3d.    For other errors apparent in the record.

The question presented by this record is, to whom does
this fund or balance in the hands of the executor of $3,879.34
belong? This determined disposes of the whole case and
includes all errors assigned substantially.

The balance now in the hands of the appellant executor was
produced in restating the final account of the executor in con-

formity with the judgment of this court, wherein we held the executor was not entitled to retain the various items which, in the aggregate, make such balance. These items were not allowed the executor for the reasons stated in the opinion of this court before cited.

It was the products of claimed profits, to which appellant was not entitled, of $2,467.06, on which interest was computed from December 23, 1876, to July 1, 1886, in the sum of $1,412.28, aggregating this balance of $3,879.34.

Manifestly this is assets of said estate, and belonged to its creditors for the satisfaction of legal claims against it.

Who are its creditors? Not the executor; he is entitled to compensation only as provided by law which has been fully paid. Not by virtue of the release under seal to the executor by the relinquishing creditors, for that does not purport to be an assignment (if, indeed, that could in this case be availing) by such creditors to the executor, of the further distributive share which they might have received, but for such release.

The most that could be said would be that this fund, or that portion of it claimed by the executor here, did, in fact, arise from the savings and profits made by the executor out of the funds of the estate or in the payment of claims at a discount, and, as such, become assets of the estate. Wingate, Admr.. v. Poole, 25 Ill. 118.

But it is said the relinquishing creditors intended the further distributive share to which they might be severally thereafter entitled should be held by the executor as his own, and that such release be held and treated as an equitable assignment to him of such *pro rata* share as compensation for his extra care and attention to the duties of said trust and the enhanced benefits to the creditors of said estate.

That the entire assets of this estate in the hands of appellant is a trust fund of which he was, and is, a trustee, can not admit of doubt. It is the law, founded on the plainest principles of common sense and public justice, that a trustee can make no profit out of his office, and the reason on which this principle rests is that a trustee shall be placed in no position where his interests may be opposed to his duty.

Colton v. Field & Leiter.

The rule that a trustee can have no allowance or compensation for his time and trouble in the execution of his trust, is the well settled doctrine of equity, and this rule applies, not only to trustees strictly so called, but to all who hold fiduciary relations, as executors, administrators, etc.

It avails nothing that the service, or the result of honest effort of such trustee, were productive of great benefit to the trust estate or promotive of great pecuniary advantage to the creditors thereof.    As such trustee, his duty was, and is, to protect the trust estate and enhance its value and productions by all honest endeavors, and to dispose of it to the best possible advantage, not for his own gain or hope of reward, but from simple duty.    That he may the more faithfully do this, the law seeks to shield him from temptation by an inflexible rule which will not permit him to palter with his own conscience and absolutely forbids him from occupying two positions inconsistent with each other—self-interest and official duty.

Regarding, as we do, the principle of law stated applicable to the case at bar, we can not yield our assent to the rule as claimed by appellant, even upon grounds of public policy alone.

All other creditors save appellees, so far as shown by this record, have executed and delivered under seal, to the trustee of this estate, a full and perfect acquittance and release of all and each of their claims upon the said estate, or to further distribution from the assets thereof, and such release and acquittance inures to the use and benefit of the said estate.

There being no other creditors of the estate, appellees are entitled to have satisfaction of their several claims to the full amount thereof, from the said balance now in the hands of the executor, and the judgment of the Circuit Court in that particular is affirmed.

The judgment of the Circuit Court as to the payment of costs by the appellant, John B. Colton, individually, is reversed, and the cause remanded to the Circuit Court with directions that it enter an order that the costs in this case including all costs that have accrued in the Appellate Court, as well as in

Circuit and County Courts, upon the application of John B. Colton, executor, as aforesaid, be paid by John B. Colton as executor, out of the assets of the estate in his hands, in the due course of administration, and in all other matters the judgment of the Circuit Court is affirmed.