164 U.S. 546 (1896)
ROWE
v.
UNITED STATES.
No. 489.
Supreme Court of United States.
Submitted October 22, 1896.
Decided November 30, 1896.
ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.
*551 Mr. Benjamin T. Duval and Mr. William F. Cravens for plaintiff in error.
Mr. Assistant Attorney General Dickinson for defendants in error.
*554 MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.
We think that these portions of the charge (to which the accused duly excepted) were well calculated to mislead the jury. They expressed an erroneous view of the law of self-defence. The duty of the jury was to consider the case in the light of all the facts. The evidence on behalf of the government tended to show that the accused sought a difficulty with some one; that on behalf of the accused, would not justify any such conclusion, but rather that he had the reputation of being a peaceable and law-abiding man. But the evidence on both sides was to the effect that the deceased used language of an offensive character for the purpose of provoking a difficulty with the accused, or of subjecting him to the indignity of a personal insult. The offensive words did not, it is true, legally justify the accused in what he did  the evidence of the government tending to show that "he kicked at deceased, hitting him lightly on the lower part of the leg"; that on the part of the accused tending to show that he "kicked at" the deceased and "probably struck him lightly." According to the evidence of the defence, the accused then "stepped back, and leaned up against the counter," indicating thereby, it may be, that he neither desired nor intended to pursue the matter further. If the jury believed the evidence on behalf of the defence, they might reasonably have inferred from the actions of the accused that he did not intend to make a violent or dangerous personal assault upon the deceased, but only, by kicking at him or kicking him lightly, to express his indignation at the offensive language of the deceased. It should have been submitted to the jury whether the act of the accused in stepping back and leaning against the counter, not in an attitude for personal conflict, was intended to be, and should have been reasonably *555 interpreted as being, a withdrawal by the accused in good faith from further controversy with the deceased. On the contrary, the court, in effect, said that if, because of words used by the deceased, the accused kicked at or kicked the deceased, however lightly, and no matter how offensive those words were, he put himself in a position to make the killing manslaughter, even if the taking of life became, by reason of the suddenness, rapidity and fierceness of the assault of the deceased, absolutely necessary to save his own. By numerous quotations from adjudged cases, the court, by every form of expression, pressed upon the jury the proposition that "a person who has slain another cannot urge in justification of the killing a necessity produced by his own unlawful and wrongful acts." But that abstract principle has no application to this case, if it be true  as the evidence on behalf of the defence tended to show  that the first real provocation came from the deceased when he used towards the accused language of an offensive character, and that the accused immediately after kicking at or lightly kicking the deceased, signified by his conduct that he no longer desired controversy with his adversary; whereupon the deceased, despite the efforts of the accused to retire from further contest, sprang at the latter, with knife in hand, for the purpose of taking life, and would most probably have accomplished that object, if the accused had not fired at the moment he did. Under such circumstances, did the law require that the accused should stand still, and permit himself to be cut to pieces, under the penalty that if he met the unlawful attack upon him and saved his own life, by taking that of his assailant, he would be guilty of manslaughter? We think not.
If a person, under the provocation of offensive language, assaults the speaker personally, but in such a way as to show that there is no intention to do him serious bodily harm, and then retires under such circumstances as show that he does not intend to do anything more, but in good faith withdraws from further contest, his right of self-defence is restored when the person assaulted, in violation of law, pursues him with a deadly weapon and seeks to take his life or do him great *556 bodily harm. In Parker v. The State, 88 Alabama, 4, 7, the court, after adverting to the general rule that the aggressor cannot be heard to urge in his justification a necessity for the killing which was produced by his own wrongful act, said: "This rule, however, is not of absolute and universal application. An exception to it exists in cases where, although the defendant originally provoked the conflict, he withdraws from it in good faith, and clearly announces his desire for peace. If he be pursued after this, his right of self-defence, though once lost, revives. `Of course,' says Mr. Wharton, in referring to this modification of the rule. `there must be a real and bona fide surrender and withdrawal on his part; for, if there be not, then he will continue to be regarded as the aggressor.' 1 Wharton's Cr. Law, (9th ed.) § 486. The meaning of the principle is that the law will always leave the original aggressor an opportunity to repent before he takes the life of his adversary. Bishop's Cr. Law, (7th ed.) § 871." Recognizing this exception to be a just one, the court properly said, in addition: "Due caution must be observed by courts and juries in its application, as it involves a principle which is very liable to abuse. The question of the good or bad faith of the retreating party is of the utmost importance, and should generally be submitted to the jury in connection with the fact of retreat itself, especially where there is any room for conflicting inferences on this point from the evidence." Both parties to a mutual combat are wrong-doers, and the law of self-defence cannot be invoked by either, so long as he continues in the combat. But, as said by the Supreme Court of Iowa in State v. Dillon, 74 Iowa, 653, 659, if one "actually and in good faith withdraws from the combat, he ceases to be a wrong-doer; and if his adversary have reasonable ground for holding that he has so withdrawn, it is sufficient, even though the fact is not clearly evinced." See also 1 Bishop's New Crim. Law, § 702; People v. Robertson, 67 California, 646, 650; Stoffer's case, 15 Ohio St. 47. In Wharton on Homicide, § 483, the author says that "though the defendant may have thus provoked the conflict, yet, if he withdrew from it in good faith and clearly announced his *557 desire for peace, then, if he be pursued, his rights of self-defence revive."
We do not mean to say that the jury ought to have found that the accused, after kicking the deceased lightly, withdrew in good faith from further contest and that his conduct should have been so interpreted. It was for the jury to say whether the withdrawal was in good faith, or was a mere device by the accused to obtain some advantage of his adversary. But we are of opinion that, under the circumstances, they might have found that the accused, although in the wrong when he kicked or kicked at the deceased, did not provoke the fierce attack made upon him by the latter, with knife in hand, in any sense that would deprive him altogether of the right of self-defence against such attack. If the accused did, in fact, withdraw from the combat, and intended so to do, and if his conduct should have been reasonably so interpreted by the deceased, then the assault of the latter with a deadly weapon, with the intent to take the life of the accused or to do him great bodily harm, entitled the latter to the benefit of the principle announced in Beard v. United States, 158 U.S. 550, 564, in which case it was said: "The defendant was where he had a right to be when the deceased advanced upon him in a threatening manner and with a deadly weapon; and if the accused did not provoke the assault, and had at the time reasonable grounds to believe, and in good faith believed, that the deceased intended to take his life or to do him great bodily harm, he was not obliged to retreat, nor to consider whether he could safely retreat, but was entitled to stand his ground and meet any attack made upon him with a deadly weapon, in such a way and with such force as, under all the circumstances, he, at the moment, honestly believed, and had reasonable grounds to believe, was necessary to save his own life or to protect himself from great bodily injury."
The charge, as above quoted, is liable to other objections. The court said that both the accused and the deceased had a right to be in the hotel, and that the law of retreat in a case like that is different from what it would be if they had been on the outside. Still, the court said that, under the circumstances, *558 both parties were under a duty to use all reasonable means to avoid a collision that would lead to a deadly conflict, such as keeping out of the affray, or by not going into it, or "by stepping to one side"; and if the accused could have saved his life, or protected himself against great bodily harm, by inflicting a less dangerous wound than he did upon his assailant, or "if he could have paralyzed that arm," without doing more serious injury, the law commanded him to do so. In other words, according to the theory of the charge, although the deceased sprang at the accused, with knife in hand, for the purpose of cutting him to pieces, yet if the accused could have stepped aside or paralyzed the arm of his assailant, his killing the latter was not in the exercise of the right of self-defence. The accused was where he had the right to be, and the law did not require him to step aside when his assailant was rapidly advancing upon him with a deadly weapon. The danger in which the accused was, or believed himself to be, at the moment he fired is to some extent indicated by the fact, proved by the government, that immediately after he disabled his assailant (who had two knives upon his person) he said that he, the accused, was himself mortally wounded and wished a physician to be called. The accused was entitled, so far as his right to resist the attack was concerned, to remain where he was, and to do whatever was necessary or what he had reasonable grounds to believe at the time was necessary, to save his life or to protect himself from great bodily harm. And under the circumstances, it was error to make the case depend in whole or in part upon the inquiry whether the accused could, by stepping aside, have avoided the attack, or could have so carefully aimed his pistol as to paralyze the arm of his assailant without more seriously wounding him.
Without referring to other errors alleged to have been committed, the judgment below is reversed and the case is remanded for a new trial.
Reversed.
MR. JUSTICE BROWN and MR. JUSTICE PECKHAM dissented.