[No. 1223, January 12, 1909.]

## TERRITORY OF NEW MEXICO, Appellee, v. JAP L. CLARK, Appellant.

### SYLLABUS (BY THE COURT).

1. A judgment of a district court will not be set aside by this court merely on the ground that the term of court at which it was rendered was not held at the de jure county seat of the county for which the term was held, as provided by law, if the term was held and the judgment rendered at the de facto county seat, as established by the Act of the Legislative Assembly of the Territory.

2. A witness for the defendant was asked on cross-examination if he made certain statements when he testified at the preliminary hearing which he had made in his testimony at the trial, to which he replied as to one of them that he did. His entire testimony at the preliminary hearing was properly admitted to show whether it contained that statement.

3. Conduct on the part of one or more of the jurors during the trial of a criminal case, although censurable, is not a sufficient ground for a new trial, unless it appears, or is at least presumable, that the defendant was prejudiced thereby.

4. Evidence of what the defendants, jointly indicted for murder had said and done not long before the homicide in relation to the man with whose murder they were charged and another man associated with him in what they regarded as hostile acts toward themselves, was properly admitted as proof of their animus toward the man who was killed.

5. In a trial for murder under sections 1060, et seq. C. L. 1897, charged in the indictment as murder in the first degree, it is not the duty of the court to give instructions covering murder in the third degree in the absence of evidence in the case that the homicide by the defendant was without intent on his part.

6. Under the circumstances shown in the record, a severance was properly denied.

7. The instruction as to self-defense was, sufficiently favorable to the defendant.

Appeal from the District Court for Torrance County, before EDWARD A. MANN, Associate Justice. Affirmed.

A. B. RENEHAN and GEORGE W. PRICHARD, for Appellant.

Evidence not *res gestae* should have been excluded. 11 Enc. Ev. 328, 405; Bird v. U. S., 180 U. S. 360; People v. La Rubria, 140 N. Y. 92; Hirschman v. The People, 101 Ill. 574; Territory v. Armijo, 7 N. M. 437; Guild v. Pringle, 130 Fed. 423; Insurance Company v. Mosely, 8 Wall 408.

The nature of the act, the circumstances under which it was done and the consequences resulting therefrom are competent evidence for or against the defendant, such as the cause of the difficulty which immediately resulted in the homicide. 6 Enc. Ev., 625, 626 and 627; 11 Enc. Ev., 403, 404 and 405.

The defendant has a right to produce self-impeachment of witness on cross-examination by questions concerning conviction of a felony, murder, and it is not necessary in questioning witness as to his conviction of crime to specify the nature, time or place, or the court in which

Territory v. Clark.

the conviction was had. 7 Enc. Ev. 218-220; C. L. 1897, sec. 3025.

A writing not executed by a witness is not the best evidence of his statements contained therein. Only where a statement is contained in a writing made by or admitted to be correct by a witness, it is proper to admit the writing in evidence to prove the statement. 2 Wigmore on Ev., secs. 1025 et seq.; 7 Enc. Ev. 128, 132 et seq. As to juror's bias, prejudice and concealment of feelings. Jewel v. Jewel, 18 L. R. A. 476, p. 6 a. b. d.; Mattox v. United States, 146 U. S. 140.

A special law locating or changing a county seat is forbidden by the Springer Act. C. L. 1897, p. 45; Laws of 1903, p. 132; Laws 1905, ch. 2, p. 3; Laws 1905, ch. 119. The law requires District Courts to be had at the county seats of the different counties. C. L. 1897, sec. 903; Burrill's, Rapalje's and Bouvier's Law Dictionaries; Lewis v. Hoboken, 13 Vroom 378; Hobart v. Hobart, 45 Ia. 503; In re Terrill, 34 Pac. 457, 39 Am. St. 327; Levoy v. Bigelow, 34 N. E. 128; In re McCloskey, 37 Pac. 856; Coulter v. Routt County, 9 Colo. 265 and, 267; State v. Harper County, 34 Kans. 302; State v. Mills, 39 Kans. 76.

The court should have instructed the jury as to murder in the third degree as requested by the defendants. Thompson v. United States, 155 U. S. 271; Rowe v. United States, 164 U. S. 354.

Not all affrays and not all deliberate or malicious acts of a man deprive him of self defense. Rowe v. United States, 164 U. S. 554.

It was an abuse of sound discretion to refuse a severance. United States v. Ball, 163 U. S. 672 and cases cited.

JAMES M. HERVEY, Attorney General, for Appellee.

"Every circumstance no matter how trivial, which bears upon the question of malice must be considered by the jury. U. S. v. Meagher, 37 Fed. Rep. 880; 1 Bish. Cr. Proc. 1125, 1126; State v. Patza, 3 La. Ann. 512; State v. Thomas, 30 La. Ann. 600; State v. Vines, 34 La.

Ann. 1081; Bird v. U. S., 180 U. S. 360; Thiede v. Utah Territory, 159 U. S. 518.

No foundation had been laid for direct question which trial court refused to permit witness to answer. Territory v. Claypool, 71 Pac. 463.

A witness may be asked on cross-examination as to whether or not he was ever convicted of an infamous crime where the question put to such witness specifies the nature of the crime, time or place, and the court in which the conviction was had, but this the counsel for appellant did not attempt to do. 2 Elliott on Evidence 982; 7 Enc. of Ev. 218-220; C. L. 1897, sec. 3025.

The courts take judicial notice of their own records, prior orders and proceedings in the same cause. I Elliott on Evidence, 29, 56, 57; C. L. 1897, sec. 3379; Pittsburg, etc. R. Co. v. Ackworth, 3 Ohio Dec. 456; in re Meyer 74 Feb. Rep. 881; Wood v. Ward, 19 South Rep. 354, Ala.; Town v. Bossier, 19 La. Ann. 162; Morris v. Ogle, 56 Ga. 592; 1 Greenleaf on Evidence 501; Sigafus v. Porter, 84 Fed. 430, 28 C. C. A. 443; in re Wong Sing, 83 Fed. 147; Pittsburg & W. R. Co. v. Thompson, 82 Fed. 720, 27 C. C. A. 333; Crocker v. Carpenter, 98 Cal. 418, 33 Pac. 271; Wise v. Wakefield, 18 Cal. 107, 50 Pac. 310; Taylor v. Adams, 115 Ill. 574; Hyde v. Heath, 75 Ill. 318; Mathis v. State, 33 Ga. 24; Randolph v. Woodstock, 35 Va. 292; Territory v. Claypool, 71 Pac. 463.

The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed. Mattox v. U. S., 146 U. S. 140.

In re-establishing a county, the re-establishment of a county seat is as fully within the powers of the legislature as is the re-establishment of the boundaries. Laws of 1903, chapter 70; Laws of 1905, chapter 2.

When the evidence shows that the defendant intended to kill, the question for the jury is whether the killing was justifiable, and it is error to charge that they might find the defendant guilty of a degree of murder in which the intent to kill is entirely wanting. Territory v. Jewel, 4 N. M. 318; Territory v. Hendricks, 13 N. M. 300.

To instruct the jury in a criminal case that the de-

fendant cannot properly be convicted of a crime less than that charged, or to refuse to instruct them in respect to the lesser offences that might, under some circumstances, be included in the one so charged—there being no evidence whatever upon which any verdict could be properly returned except one of guilty or of not guilty of the particular offence charged—is not error. Rowe v. U. S., 164 U. S. 554; Sparf & Hansen v. U. S., 156 U. S. 103; Territory v. Gonzales, 1 N. M. 447.

Where two or more persons are jointly charged in the same indictment with a capital offense, they have not a right, by law, to be tried separately without the consent of the prosecutor. U. S. v. Merchant and Colson, 12 Wheat. 480; U. S. v. Ball, 163 U. S. 672.

## OPINION OF THE COURT.

ABBOTT, J.—(The essential facts appear in the opinion.)—Of the errors assigned by the defendant, one is of special importance, since it raises the question whether a term of the Sixth Judicial District Court for Torrance County can be legally held at Estancia, where the defendant was convicted of murder in the second degree at what purported to be a term of said court held in June, 1907.

Torrance County was created by the Legislative Assembly of the Territory of New Mexico, by Chapter 70, of the Laws of 1903, and Progreso was made the county seat; by chapter 2 of the Acts of 1905, the assembly attempted to make Estancia the county seat. This, the appellant claims, is in violation of the "Springer Act," so called. C. L. 1897, p. 45. Its language on the point is as follows: "The legislatures of the Territories of the United States shall not pass local or special laws in any of the following enumerated cases; that is to say:  *  *  *  Locating or changing county seats." By act of Congress approved July 19, 1888, (C. L. 1897, p. 60), it was declared that the Springer Act should not be construed to prohibit the creation by Territorial Legislatures of new counties and the location of the county seats thereof. That the statute, chapter 2, 1905, is a local or special law, cannot be doubted, and, indeed, the contrary is not claimed in the brief

for the Territory. See Note to State v. Sayre, Vol. 4 Am.
& Eng. An. Cases, p. 659; Codlin v. County Commis-
sioners, 9 N. M. 565. It is however suggested in the
brief of the attorney general that the act in question was
really the "re-establishment" of Torrance County. But
the assembly clearly excluded that idea by providing in
section one of the statute in question, that the act—chapter
70, laws of 1903, "is hereby amended as follows:" not
that it or any part of it is repealed. In section 6 of the
later statute it is explicitly declared that no section of
the original act "not herein expressly referred to shall
be affected", and that "all the officers of said county of
Torrance chosen at the last general election shall hold
their offices as if this act had not been passed." Certainly
a county which has once been established or created cannot
be again created until it has first ceased to exist. It is
significant in this connection, that the same assembly, by
chapter 10, acts of 1905, "abolished" the County of San-
doval, and then proceeded to "create" a county of the
same name, with the county seat at Bernalillo instead of
at Sandoval where it had before that been. Further, it is
not without a bearing on the intention of the assembly in
enacting the law in question that there was then in effect
a general law of the Territory (section 630, C. L. 1897)
providing for the changing of county seats, and that
it was amended by the same assembly. (Chapter 119,
Acts of 1905).

But if it be conceded that Estancia is not the *de jure*
county seat of Torrance County, does it follow that the
trial of the appellant was invalid because it was had
there, contrary to section 903, C. L. 1897, which provides
that "the District Courts shall be held at the county seats
of the different counties"? It is not suggested that the
appellant was in any way actually harmed or put at any
disadvantage through the fact that he was tried at Estan-
cia rather than at Progreso, which is indeed merely a
name, there being no settlement at that point. It was,
however, unquestionably the earlier doctrine that a court
could be held only at the place fixed by law for its sessions,

Territory v. Clark.

and that any trial attempted to be held elsewhere was a nullity. It may well be questioned whether that view is sustained by sound reason, when, as in this case, the place at which the court was held was *de facto* the county seat by legislative enactment. The validity of such a statute should, in the public interest, be attacked in a direct proceeding, rather than in an ordinary case coming before the court. Robinson v. Moore, 25 Ill. 118. That a valid session of court may be held at a *de facto* county seat is held and the view ably sustained in re Chas. Atchison, 13 Colo. 525, 10 L. R. A. 790; Robinson v. Moore, *supra*. That conclusion, it seems to us, better serves the ends of justice, than the opposite one. Indeed, the language of the court in Robinson v. Moore, *supra,* is not inappropriate to this case. "This may be a question of great doubt, x x x and it would be monstrous indeed to hold that if the Circuit Judge was mistaken in his conclusions as to which place was the county seat all his proceedings were void and all his judgments mere nullities."

Another claim of serious error is based on the fact that the testimony of James T. Smart, at the preliminary hearing at which the appellant was held for the grand jury, was admitted in evidence at the trial without proof that it was his testimony. As we understand the record that objection was not distinctly made at the time the evidence was offered. The proffer was, "I will offer in evidence so much of the transcript of the evidence taken on the preliminary examination of these defendants as includes the evidence of James T. Smart, who has testified here," to which the attorneys for the defendants said: "We will object to it as immaterial, irrelevant and incompetent. No foundation has been laid for the introduction *en masse* of that testimony, the witness Smart not having TESTIFIED GENERALLY as to that testimony, except as to particular portions of the testimony." By one, at least, of the questions put to him, he was asked if he made a certain statement when he testified at the preliminary hearing, to which he replied that he did. It could

not be determined whether that statement was correct without reading all that testimony. It appeared that the transcript which was offered had been produced and filed in court by the defendants on an application for a writ of *habeas corpus,* and was among the papers in the cause on the trial. Whether, under those circumstances, these defendants could be heard to question its correctness, *quære?* But, even if there was legal error in admitting it, it does not appear that it differed materially from Smart's testimony at the trial, or that the defendant was probably injured by its admission; and the error, if any, was harmless. U. S. v. Claypool, et al, 11 N. M. 580; Cunningham v. Springer, 13 N. M. 259; Cunningham v. Springer, 204 U. S. 647, 652.

Another error assigned is based on the admission of evidence as to an attack by the defendants, Clark and his co-defendant, McKean on J. C. Gilbert, a short time before the encounter with Chase, in which the latter was killed, and of evidence that he and McKean were in Torrance armed as they were on the day of the homicide in question, a few days before it occurred. There was undisputed testimony that Chase and Gilbert had been associated in one or more prosecutions of Clark, that Chase had threatened to kill Clark the first time he had the chance, or the first time he came to Torrance, and that the threats had been communicated to Clark some months before the homicide. It also appeared that Chase and Gilbert had incurred the hostility of McKean by what they had done in a criminal proceeding against him. Clark and McKean were on trial for the murder of Chase.

It was relevant and material, as we think, under such circumstances, to show that they went to Torrance together armed a few days before the killing of Chase; that they went there together armed on the day of the killing, met Gilbert in a saloon, and as he testified, joined in beating him, Clark declaring it was because he, Gilbert, had lied about him in court, that a little later Chase passed when McKean said to Clark: "You have licked one, I will lick the other," and followed Chase to the railroad station

where he challenged him to fight, and on his refusal went back and reported to Clark, who then went where Chase was, and the quarrel which resulted in his killing Chase began. The evidence in relation to the assault on Gilbert was afterwards withdrawn from the consideration of the jury by the court; but, as it appears to us, that need not have been done. The matters testified of all bore so close relation to the homicide itself that they were admissible to characterize and explain it. Thiede v. Utah, 159 U. S. 518; United States v. Meagher, 37 Fed. 880.

The statement by a juror, after verdict, to Mr. Renehan, one of the counsel for the defendant, which it is claimed shows that his statement on his *voir dire* were not true, does not, we think, necessarily have that effect. The evidence he heard during the trial may very well have brought to his recollection matters which he had before known or heard of but did not have in mind when he was examined for the jury. There was testimony in the case well calculated to have that effect, and to connect any general talk he may have heard about the work of Chase against law-breakers with the case on trial. That one of the jurors commented on the evidence as it was progressing. to one of his fellow members; that while the case was in progress but before it had been submitted to the jury, the jurors, on their way to breakfast, went into a saloon, the bailiffs in charge and one juror protesting, but keeping with the others, and these eleven jurors ordered and were served with liquor; that some of them talked from the windows of the room where they were when the trial was not in progress, to persons outside, was censurable, and doubtless would have been censured by the court if those incidents had been brought to its attention; although it did not appear that intoxication resulted from the drinking or that the talk was about the case, but they do not require or warrant a reversal of the judgment, "as no harm to the appellant was either shown or presumable." Bishop's New Crim. Proc., Vol. 1, Sec. 999, and cases cited; Vol. 17 Am. & Eng. Enc. of Law, pp. 1204. 1206.

The evidence in the case did not call for an instruction as to murder in the third degree. Territory v. Jewell, 4 N. M. 318; Territory v. Hendricks, 13 N. M. 300; 84 Pac. 523.

On the question of self defense the court against the objection of the defendants gave this instruction: "The defendants cannot avail themselves of the doctrine of necessary self-defense if the necessity of that defense was brought on by themselves, or provoked by their own deliberate or malicious acts, or by beginning the fight with the deceased for the purpose of taking his life or committing a bodily harm upon him, in which he killed deceased by the use of a deadly weapon, unless the defendant in reality and in good faith endeavored to decline any further struggle before the fatal shot was fired." We think the instruction was sufficiently favorable to the defendant. Rowe v. United States, 164 U. S. 554; Sparf & Hanson v. U. S. 156 U. S. 103; Territory v. Gonzales, 11 N. M. 301, 68 Pac. 925.

It was a proper exercise of the discretion of the court to refuse to grant a severance under the circumstances. There was evidence strongly tending to show that the appellant and McKean acted in collusion to attack Chase, on account of a common hostility to him growing out of their alleged grievances against him. That such evidence was to be offered was doubtless made known to the court in the argument of the motion for a severance. United States v. Merchant and Colson, 12 Wheaton, 480.

The other assignments of error do not call for consideration separately.

The judgment of the District Court is affirmed.